UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

MICHAEL ADAMS,

       Plaintiff,

v.                                     Civil Action No. 2:10-0423

BARRY PARSONS and
M. G. ROBINSON and
R. D. SIZEMORE and
C. R. HOLBERT and
J. J. LESTER and
HERB SHELTON and
STEPHEN P. BARKER, JR.,
all individually,

       Defendants.


<u>MEMORANDUM OPINION AND ORDER</u>


       Pending is the motion to dismiss of defendant Barry
Parsons ("Parsons"), filed June 21, 2010, which has been joined
by defendants M.G. Robinson ("Robinson"), R.D. Sizemore
("Sizemore"), C.R. Holbert ("Holbert"), J.J. Lester ("Lester"),
and Herb Shelton ("Shelton") (collectively, "defendant
officers").

       I.  Factual Background per First Amended Complaint

       Defendant officers were at all relevant times members
of a federal drug task force known as the "US 119 Drug and
Violent Crimes Task Force" ("US 119 Task Force").  (First Am.

Compl. ¶¶ 2-8).  Parsons is an agent with the Drug Enforcement Administration ("DEA").  (Id. ¶ 2).  Robinson is a first sergeant with the West Virginia State Police ("WVSP").  (Id. ¶ 3). Holbert is a senior trooper with the WVSP.  (Id. ¶ 7).  Lester is a sergeant with the WVSP.  (Id. ¶ 5).  Sizemore is a sergeant with the Logan County Sheriff's Department.  (Id. ¶ 4).  Shelton is a deputy with the Boone County Sheriff's Department.  (Id. ¶ 6).  Sizemore and Shelton were both deputized by the DEA as federal law enforcement agents.  (Mem. Supp. Mot. Dismiss 1).

In March and April of 2006, defendant officers conducted a drug investigation in Logan County, West Virginia as part of the US 119 Task Force.  (First Am. Compl. ¶ 12).  During this investigation, the officers retained defendant Stephen P. Barker, Jr. ("Barker") as a confidential informant.  (Id. ¶ 13).

On March 31, 2006, the defendant officers executed a controlled drug purchase using Barker as the purchaser.  (Id.). They fitted Barker with an audio recording device and sent him to the residence of Musco Adams[1] to attempt to purchase cocaine. (Id. ¶¶ 13-14).  Upon arriving at the house, Musco Adams told Barker to go inside so he could be "taken care of."  (Id.).

---

[1]    The amended complaint does not clarify what relationship, if any, Musco Adams has to plaintiff Michael Adams.

Barker knocked on the door and was met by an individual who proceeded to sell Barker a bag of cocaine for $250.  (Id.).

Defendant officers maintained visual surveillance of Barker until he entered the house.  (Id. ¶ 15).  After the drug transaction, Barker gave the audio recording device to the officers.[2]  (Id.).  When asked who sold him the cocaine, Barker identified plaintiff Michael Adams, even though the drug seller was not identified by name or nickname during the drug purchase.  (Id.).  The audio recording revealed that the drug seller had a slight Midwestern or Northern regional accent.  (Id.).  Plaintiff Michael Adams does not have such an accent.  (Id. ¶ 19).

On April 7, 2006, defendant officers conducted another controlled drug purchase using Barker as the purchaser.  (Id. ¶ 16).  This time, they fitted Barker with an audio and video recording device.  (Id.).  Musco Adams instructed Barker to drive to the local dog pound to retrieve the drugs.  (Id.).  Once there, Barker identified and approached an individual on a four-wheeler who then sold Barker a bag of cocaine.  (Id.).

Following the transaction, Barker turned over the drugs

---

[2]      The amended complaint does not say whether Barker also gave the officers the cocaine at this time, though presumably he did.

and recording device to defendant officers.  (Id. ¶ 17).  Barker
then gave a written statement identifying plaintiff Michael Adams
as the individual on the four-wheeler.  (Id.).  He further stated
that plaintiff was wearing a yellow, long-sleeved shirt and that
he took the drugs out of his front left pants pocket.  (Id.).

        The video of the April 7, 2006 controlled purchase did
not capture a facial image of the individual on the four-wheeler.
(Id. ¶ 18).  It did, however, capture the individual's body from
the chest down.  (Id.).  Contrary to Barker's written statement,
the individual on the four-wheeler was wearing a green jacket,
not a yellow shirt.  (Id.).  The video also showed that the
individual took the drugs out of his right pants pocket instead
of his left pocket.  (Id.).  And a video capture of the
individual's hand revealed that he had pale skin and a wide
thumbnail on his right hand.  (Id.).  Plaintiff Michael Adams is
bi-racial and does not have pale skin, nor does he have a wide
thumbnail on his right hand.  (Id. ¶ 19).

        Plaintiff alleges that the recordings from March 31 and
April 7, 2006 clearly show that plaintiff was not the individual
who sold the drugs to Barker.  (Id.).  He further claims that, at
the time of the drug purchases, Musco Adams had a Caucasian
roommate from Michigan whom defendant officers never

4

investigated.  (Id.).

Plaintiff was indicted in the United States District Court for the Southern District of West Virginia on October 1, 2008 for selling drugs to Barker on March 31 and April 7, 2006. (Mem. Supp. Mot. Dismiss 1).  The next day, October 2, 2008, plaintiff was arrested on a bench warrant.  (Id.).  Defendant officers relied solely on Barker's testimony, the audio recording from the March 31, 2006 drug purchase, and the audio and video recording from the April 7, 2006 drug purchase.  (First Am. Compl. ¶ 20).  In the two and one-half year period between the two controlled drug purchases and plaintiff's arrest, defendant officers did not attempt to further investigate this matter or corroborate Barker's testimony.  (Id. ¶ 21).  On December 30, 2008, three months after the arrest, the government dismissed the federal indictment against plaintiff.  (Id. ¶ 23).

## II.  Procedural History

Plaintiff initiated this action in the Circuit Court of Logan County, West Virginia on March 29, 2010.  Defendants removed on April 1, 2010, invoking this court's jurisdiction under 28 U.S.C. §§ 2679 and 1442(a)(1).  Plaintiff subsequently amended his complaint on June 8, 2010.

5

The first amended complaint sets forth four counts
against defendants.  Count I is a negligence claim and Count II
is a claim for intentional infliction of emotional distress, both
of which are asserted only against defendant Barker.  Count III
is a 42 U.S.C. § 1983 claim against the state law enforcement
officers –- Robinson, Sizemore, Holbert, Lester, and Shelton –-
which asserts that defendants violated plaintiff's Fourth
Amendment rights under color of state law by carrying out an
unlawful arrest, imprisonment, and prosecution.  (First Am.
Compl. ¶¶ 34-39).  Count IV is a _Bivens_[3] claim, brought against
all defendant officers as agents of the United States, also
alleging violations of plaintiff's Fourth Amendment rights.  (Id.
¶¶ 40-44).  Plaintiff requests damages for mental anguish,
emotional distress, annoyance, inconvenience, and economic loss.
(Id. 8).  Plaintiff further requests compensatory damages,
punitive damages, and attorney's fees and costs.  (Id. 8-9).

On June 21, 2010, Parsons moved to dismiss pursuant to
Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Parsons

---

[3]    See _Bivens v. Six Unknown Named Agents of Federal Bureau
of Narcotics_, 403 U.S. 388, 389 (1971) (holding that "violation
of [the Fourth Amendment] by a federal agent acting under color
of his authority gives rise to a cause of action for damages").
_Bivens_ is the "federal analogue" to § 1983.  _Hartman v. Moore_,
547 U.S. 250, 254 (2006).

contends that he is entitled to qualified immunity from
plaintiff's <u>Bivens</u> claim inasmuch as he did not violate
plaintiff's clearly established constitutional rights.  (Mem.
Supp. Mot. Dismiss 3).  Sizemore and Shelton joined Parsons'
motion to dismiss on June 28, 2010, and Robinson, Holbert, and
Lester joined the motion on July 1, 2010.  All defendant officers
have incorporated by reference the memorandum of law supporting
Parsons' motion to dismiss.  Defendant Barker has not made an
appearance in this action, nor has plaintiff tendered proof of
service on Barker.

On July 16, 2010, the court entered the parties' agreed
order to stay this action pending resolution of the Parsons
motion to dismiss.

### III.  Motion to Dismiss

A.  Governing Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a
pleader provide "a short and plain statement of the claim showing
. . . entitle[ment] to relief."  Fed. R. Civ. P. 8(a)(2);
<u>Erickson v. Pardus</u>, 127 S. Ct. 2197, 2200 (2007).  Rule 12(b)(6)
correspondingly permits a defendant to challenge a complaint when
it "fail[s] to state a claim upon which relief can be granted."

7

Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Twombly, 550 U.S. at 563); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007). In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); see also Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009). But, as the Supreme Court recently explained, "a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." Skinner v. Switzer, -- U.S. --, -- S. Ct. --, 2011 WL 767703, at *6 (March 7, 2011) (citing 5 C. Wright & A. Miller, Federal Practice & Procedure § 1219, pp. 277-278 (3d ed. 2004 and Supp. 2010)).

Application of the Rule 12(b)(6) standard requires that

8

the court "'accept as true all of the factual allegations contained in the complaint.'" Erickson, 127 S. Ct. at 2200 (quoting Twombly, 127 S. Ct. at 1965); see also South Carolina Dept. Of Health And Environmental Control v. Commerce and Industry Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)). The court must also "draw[] all reasonable . . . inferences from th[e] facts in the plaintiff's favor." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

B.   Qualified Immunity Analytical Framework

          Defendant officers assert the defense of qualified immunity. The court notes at the outset that the qualified immunity analysis for § 1983 and Bivens is identical. See Holly v. Scott, 434 F.3d 287, 292 (4th Cir. 2006) ("Bivens . . . shares some features with § 1983 -- e.g., the qualified immunity analysis is the same under both") (citing Butz v. Economou, 438 U.S. 478, 504 (1978)). The court will, accordingly, analyze all of the defendant officers' qualified immunity defenses under one rubric.

          The doctrine of qualified immunity protects government officials from actions for civil damages to the extent that the

9

officials do not violate clearly established constitutional
rights.  See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).
Because it is an immunity, and not merely a defense, it shields
government officials not only from liability but also from the
burdens of trial and preparing for trial, and so it is to be
addressed by the court at the earliest possible stage of the
litigation.  Hunter v. Bryant, 502 U.S. 224, 227 (1991); Mitchell
v. Forsyth, 472 U.S. 511, 526, (1985).  "[I]t is effectively lost
if a case is erroneously permitted to go to trial."  Mitchell,
472 U.S. at 526.

     The test for qualified immunity is a two-pronged
inquiry.  The court must determine, in no particular order, (1)
whether a constitutional right has been violated on the facts
alleged and (2) whether the right was clearly established at the
time so that it would be clear to an objectively reasonable
officer that his conduct violated that right.  Saucier v. Katz,
533 U.S. 194, 200-02 (2001), overruled on other grounds by
Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).[4]  A right is

---

     [4]     In Pearson, the Supreme Court clarified that the two-
step qualified immunity inquiry need not be taken in the sequence
set forth in Saucier, and that "[t]he judges of the district
courts and the courts of appeals should be permitted to exercise
their sound discretion in deciding which of the two prongs . . .
should be addressed first in light of the circumstances in the
particular case at hand."  129 S. Ct. at 818.

10

clearly established if "[t]he contours of the right [are]
sufficiently clear that a reasonable official would understand
that what he is doing violates that right." Id. at 202.  With
this framework in mind, the court turns to plaintiff's claims.
Plaintiff asserts that defendant officers arrested, detained, and
prosecuted him without probable cause in violation of the Fourth
Amendment.

C.   False Arrest and False Imprisonment Claims

        Since plaintiff does not dispute that he was arrested
pursuant to a facially valid warrant, his claims for false arrest
and false imprisonment fail as a matter of law.  See Porterfield
v. Lott, 156 F.3d 563, 568 (4th Cir. 1998) ("a public official
cannot be charged with false arrest when he arrests a defendant
pursuant to a facially valid warrant.  At most, such an official
can be pursued through a cause of action for malicious
prosecution."); see also Wallace v. Kato, 549 U.S. 384, 390
(2007) ("If there is a false arrest claim, damages for that claim
cover the time of detention up until issuance of process or
arraignment, but not more.  From that point on, any damages
recoverable must be based on a malicious prosecution claim and on
the wrongful use of judicial process rather than detention

11

itself.") (citations omitted).[5]  To the extent that plaintiff
contends that his arrest and detention were unsupported by
probable cause, his allegations "must be relevant only to his
claim for malicious prosecution."  Porterfield, 156 F.3d at 568.
The court accordingly proceeds to consider plaintiff's claim
against defendant officers for malicious prosecution.

D.   Malicious Prosecution Claim

        In Snider v. Lee, the Fourth Circuit recently expounded
upon the standards governing Fourth Amendment malicious
prosecution claims as follows:

> While it is not entirely clear whether the Constitution
> recognizes a separate constitutional right to be free
> from malicious prosecution, see Albright v. Oliver, 510
> U.S. 266, 279-80 n.5, 114 S.Ct. 807, 127 L.Ed. 2d 114
> (1994) (Ginsburg, J., concurring); Lambert v. Williams,
> 223 F.3d 257, 261-62 (4th Cir. 2000), if there is such a
> right,  the  plaintiff  must  demonstrate  both  an
> unreasonable seizure and a favorable termination of the
> criminal proceeding flowing from the seizure.  In Lambert
> we explained:
>
>> Our   analysis   in   Brooks   [v. City of
>> Winston-Salem, 85 F.3d 178 (4th Cir.1996)],
>> understood in light of these precedents, makes
>> clear that there is no such thing as a "§ 1983
>> malicious prosecution" claim.  What we termed
>> a "malicious prosecution" claim in Brooks is
>> simply a claim founded on a Fourth Amendment

_____

        [5]    The Court also noted in Wallace that "[f]alse arrest
and false imprisonment overlap; the former is a species of the
latter."  549 U.S. at 388.

12

> seizure that incorporates elements of the
> analogous common law tort of malicious
> prosecution-specifically, the requirement that
> the prior proceeding terminate favorably to
> the plaintiff.

223 F.3d at 262.

Snider v. Lee, 584 F.3d 193, 199 (4th Cir.), cert. denied, 130 S.
Ct. 2073 (2010).

Snider indicates that a Fourth Amendment malicious
prosecution claim consists of "two elements -- a wrongful seizure
and a termination in [the plaintiff's] favor of the proceedings."
Id. In addition to these two elements, it is well settled that a
plaintiff asserting a constitutional tort under § 1983 or Bivens
must, like any tort plaintiff, satisfy the element of proximate
causation. See Higazy v. Templeton, 505 F.3d 161, 175 (2d Cir.
2007) ("a Section 1983 action[] employs the tort principle of
proximate causation . . . The same is true of Bivens actions.");
Murray v. Earle, 405 F.3d 278, 290 (5th Cir. 2005) ("Section 1983
does require a showing of proximate causation, which is evaluated
under the common law standard."); Egervary v. Young, 366 F.3d
238, 246 (3d Cir. 2004) ("because Bivens actions are simply the
federal counterpart to § 1983 claims . . . and because tort law
causation analysis serves as the basis for determining causation
in § 1983 actions . . . tort law causation must govern our

analysis of this <u>Bivens</u> claim.").  Thus, to establish § 1983 and <u>Bivens</u> liability, plaintiff must allege and ultimately prove that defendant officers proximately caused his injuries.

The first amended complaint alleges that defendant officers relied solely upon Barker's testimony and the recordings from the two controlled drug purchases as a basis for probable cause, despite the alleged fact that this evidence exculpated plaintiff.  As a consequence, plaintiff maintains, defendant officers seized plaintiff pursuant to a warrant unsupported by probable cause, detained plaintiff without probable cause, and permitted him to be prosecuted without probable cause.

Plaintiff's arrest, detention, and prosecution occurred <u>after</u> the issuance of the grand jury indictment on October 1, 2008.  (<u>See</u> Compl. ¶ 20 (noting arrest occurred on October 2, 2008); Mem. Supp. Mot. Dismiss 1 (citing <u>United States v. Adams</u>, Crim. No. 2:08-cr-210, Doc. No. 7, 17 (S.D. W. Va.)).  Relying on this undisputed fact, defendant officers assert that their liability is foreclosed by the prosecutor's independent decision to prosecute and the grand jury's independent decision to indict plaintiff.

14

As this court has previously observed, it is "well
established that where an officer presents all relevant probable
cause evidence to an intermediary, such as a prosecutor, a grand
jury, or a magistrate, the intermediary's independent decision to
seek a warrant, issue a warrant, or return an indictment breaks
the causal chain and insulates the officer from a section 1983
claim based on lack of probable cause for an arrest or
prosecution." Rhodes v. Smithers, 939 F. Supp. 1256, 1274 (S.D.
W. Va. 1995) (Copenhaver, J.) (collecting cases from the Second,
Fifth, Seventh, Ninth, Tenth, and Eleventh Circuits), aff'd, 91
F.3d 132 (4th Cir. 1996) (table).  Since this court's observation
in Rhodes, the courts of appeals have continued to hold that an
independent act of an intermediary breaks the causal chain
required for a constitutional tort claim against a police
officer, unless the plaintiff shows -- or alleges, at the motion
to dismiss stage -- that the officer mislead or unduly pressured
the intermediary.

Those courts of appeals cases since Rhodes include:
Beck v. City of Upland, 527 F.3d 853, 862 (9th Cir. 2008)
(recognizing a "rebuttable-presumption . . . 'that the prosecutor
filing [a criminal] complaint exercised independent judgment in
determining that probable cause for an accused's arrest

15

exist[ed],' thereby breaking the 'chain of causation between an arrest and prosecution' and immunizing 'investigating officers . . . from damages suffered' after the complaint was filed") (citations omitted); Shields v. Twiss, 389 F.3d 142, 150 (5th Cir. 2004)("once facts supporting an arrest are placed before an independent intermediary such as a . . . grand jury, the intermediary's decision breaks the chain of causation" required for a constitutional tort claim unless "the deliberations of that intermediary were in some way tainted by the actions of the defendants")(internal quotations and citations omitted); Egervary v. Young, 366 F.3d 238, 250 (3d Cir. 2004) (holding that when a "judicial officer or other independent intermediary . . . is provided with the appropriate facts to adjudicate the proceeding but fails to properly apply the governing law and procedures, such error must be held to be a superseding cause, breaking the chain of causation for purposes of § 1983 and Bivens liability."); Townes v. City of New York, 176 F.3d 138, 147 (2d Cir. 1999) (reversing district court's denial of motion to dismiss § 1983 claim against police officers; stating that "[i]t is well settled that the chain of causation between a police officer's unlawful arrest and a subsequent conviction and incarceration is broken by the intervening exercise of independent judgment . . . [a]t least . . . in the absence of

16

evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment."); <u>Reed v. City of Chicago</u>, 77 F.3d 1049, 1053 (7th Cir. 1996) (affirming district court's dismissal of complaint; holding that "the chain of causation is broken by an indictment, absent an allegation of pressure or influence exerted by the police officers, or knowing misstatements made by the officers to the prosecutor"); <u>Taylor v. Meacham</u>, 82 F.3d 1556, 1564 (10th Cir. 1996) (adopting <u>Reed</u>'s reasoning and holding that no claim could be sustained against a sheriff who may have "set in motion a malicious prosecution" because the "preliminary hearing broke the 'chain of causation'" and there was no evidence that the sheriff "made false or misleading statements following [the plaintiff's] arrest, nor that he somehow caused false or perjured testimony to be presented at the preliminary hearing"); <u>see</u> <u>also</u> <u>Powers v. Hamilton Cnty. Pub. Defender Comm'n</u>, 501 F.3d 592, 610 (6th Cir. 2007) (noting that "even if it is foreseeable that a defendant's conduct will lead to the complained of harm, a defendant may be able to avoid § 1983 liability by pointing to the intervening action of a judge as the proximate cause of the plaintiff's

17

injury.").[6]

The superceding cause rule is said to be grounded in the general tort principle that "an intervening act of a third party, which [causes harm] after the first person's wrongful act has been committed, is a superseding cause which prevents the first person from being liable [even though the first person's

---

[6] The Second Circuit has considered a different view. In Zahrey v. Coffey, 221 F.3d 342 (2d Cir. 2000), the court noted a "tension [between] the principle that the 'intervening exercise of independent judgment' will break a causal chain, Townes, 176 F.3d at 147 [(2d Cir.)], and the principle that defendants in section 1983 cases are liable for consequences caused by 'reasonably foreseeable intervening forces,' Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 561 (1st Cir. 1989)." Zahrey, 221 F.3d at 352; see also Murray, 405 F.3d at 292 n.41 (citing Zahrey and recognizing "a fundamental tension between these primary tenets of tort law"). The Zahrey court stated that "[e]ven if the intervening decision-maker (such as a prosecutor, grand jury, or judge) is not misled or coerced, it is not readily apparent why the chain of causation should be considered broken where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an 'independent' decision that results in a deprivation of liberty." Id.
    The Second Circuit later seemed to indicate that the foregoing language from Zahrey was dicta. See Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007). The court in Wray court also undertook to reconcile the apparent tension between the "reasonable foreseeability" and "superseding cause" rationales as follows: "In Zahrey, we posed the question why an 'initial wrongdoer' may escape the reasonably foreseeable consequences of his actions. It is always possible that a judge who is not misled or deceived will err; but such an error is not reasonably foreseeable . . . Moreover, in the absence of evidence that Officer Weller misled or pressured the prosecution or trial judge, he was not an 'initial wrongdoer.'" Id. at 195 (citations omitted) (emphasis added).

18

conduct] was a substantial factor in bringing about" the harm. Egervary, 366 F.3d at 246 (citing Restatement (Second) of Torts § 440-41 (1965))[7]; see also Black's Law Dictionary 251 (9th ed. 2009) (defining "superseding cause" as "[a]n intervening act or force that the law considers sufficient to override the cause for which the original tortfeasor was responsible, thereby exonerating that tortfeasor from liability."). The court adheres to the superseding cause rationale discussed in Rhodes and the various courts of appeals decisions cited above.

Turning to this case, it appears that the independent acts of the prosecutor and grand jury were sufficient superceding causes to preclude liability of defendant officers. To reiterate, plaintiff alleges that the investigatory materials gathered by defendant officers did not support a finding of probable cause, and that defendant officers are consequently liable for his arrest, detention, and prosecution inasmuch as these actions were carried out in violation of the Fourth Amendment. Plaintiff does not allege, however, that defendant officers concealed or misrepresented facts or brought such undue

---

[7] Section 440 of the Restatement (Second) of Torts provides as follows: "A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about."

pressure to bear on the intermediary (here, the prosecutor and grand jury) that the intermediary's independent judgment was overborne.  See Rhodes, 939 F. Supp. at 1274.  Absent such an allegation of deception or coercion on the part of the officers, the court is left to conclude that defendant officers provided all relevant probable cause evidence to the prosecutor, and that the prosecutor and grand jury made independent probable cause determinations based upon the evidence provided.  It follows that the intermediaries' acts -- which resulted in an indictment and arrest warrant -- broke the causal chain between defendant officers' conduct and the plaintiff's subsequent arrest, detention, and prosecution.[8]  Accordingly, based upon the facts alleged, the court concludes that defendant officers did not violate plaintiff's clearly established Fourth Amendment rights and are therefore entitled to immunity from plaintiff's Fourth Amendment malicious prosecution claim.

---

[8]     Plaintiff cites Rhodes for the proposition that, in order to successfully raise the defense of qualified immunity against a malicious prosecution claim, the defendant officer must show that "he did not conceal or misrepresent the facts of the investigation, and that he did not pressure [the prosecutor] to prosecute the Plaintiff."  (Pl.'s Resp. 4).  But Rhodes actually supports the opposite proposition inasmuch as the court cited approvingly many cases holding that the plaintiff has the burden of alleging that the officers engaged in misconduct.  See id. at 1274.  And while plaintiff suggests in his response brief, for the first time, that defendant Parsons "may have mislead [the prosecutor], filed misleading reports, or pressured [the prosecutor] to prosecute the Plaintiff," (Pl.'s Resp. 5), these allegations are nowhere to be found in the complaint.

E.    Plaintiff's Request for Discovery

        In his response, plaintiff repeatedly urges the court
to permit this case to proceed to discovery, asserting that there
are "numerous unresolved questions of fact" and that the only way
to determine whether defendants engaged in misconduct "is to
conduct full-blown discovery."  (Pl.'s Resp. 5, 7).  The court
must be mindful, however, of the Supreme Court's recent
admonition that "[t]he basic thrust of the qualified-immunity
doctrine is to free officials from the concerns of litigation,
including 'avoidance of disruptive discovery.'"  Ashcroft v.
Iqbal, 129 S. Ct. 1937, 1953 (2009) (citations omitted).  "When a
district court denies qualified immunity at the dismissal stage,
that denial subjects the official to the burdens of pretrial
matters, and some of the rights inherent in a qualified immunity
defense are lost."  Jenkins v. Medford, 119 F.3d 1156, 1159 (4th
Cir. 1997).  Thus, "unless the plaintiff's allegations state a
claim of violation of clearly established law, a defendant
pleading qualified immunity is entitled to dismissal before the
commencement of discovery."  Mitchell v. Forsyth, 472 U.S. 511,
526 (1985); see also Cottone v. Jenne, 326 F.3d 1352, 1357 (11th
Cir. 2003) (noting that it is "appropriate for a district court
to grant the defense of qualified immunity at the motion to
dismiss stage" when the plaintiff's allegations do not state a

claim for violations of clearly established law) (citations omitted).

As discussed above, plaintiff's first amended complaint does not state a claim for violations of clearly established law. Contrary to plaintiff's assertions, then, there are no factual issues that must be explored through discovery because, even assuming all plaintiff's allegations to be true, no Fourth Amendment violation has been shown on the facts alleged. Further, allowing this action to proceed to discovery would undermine the discovery-avoidance rationale underlying the qualified immunity doctrine.  See Iqbal, 129 S. Ct. at 1953.

### IV.  Conclusion

For the foregoing reasons, it is ORDERED that Parsons' motion to dismiss, joined by defendants Robinson, Holbert, Lester, Sizemore, and Shelton, be, and it hereby is, granted, and defendants Parsons, Robinson, Holbert, Lester, Sizemore, and Shelton are dismissed from this action.  It is further ORDERED that the stay be, and it hereby is, lifted.

The Clerk is directed to forward a copy of this written opinion and order to counsel of record and any unrepresented parties.

DATED: April 15, 2011

John T. Copenhaver, Jr.
United States District Judge