UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

MICHAEL ADAMS,

            Plaintiff,

v.                                    Civil Action No. 2:10-0423

STEPHEN P. BARKER, JR.,

            Defendant.


<u>MEMORANDUM OPINION AND ORDER</u>


        Pending is the plaintiff Michael Adams' motion for

entry of default judgment against defendant Stephen P. Barker,

filed August 16, 2011.


I.


        The factual and procedural background of this action is

fully set forth in the court's memorandum opinion and order,

entered April 15, 2011 ("April 15 order"), and is incorporated

herein by reference.  <u>See</u> <u>Adams v. Parsons</u>, No. 2:10-423, 2011 WL

1464856 (S.D. W. Va. Apr. 15, 2011) (Doc. No. 48).  Mr. Adams

instituted this action against several federal and state officers

("defendant officers") and a confidential informant ("Mr.

Barker"), all of whom participated in a drug investigation that

resulted in Mr. Adams' alleged wrongful arrest, detention, and

prosecution.  The operative pleading is the first amended complaint.  As more fully discussed <u>infra</u>, the first amended complaint asserts two tort claims against Mr. Barker and Fourth Amendment claims against the defendant officers pursuant to 42 U.S.C. § 1983 and <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).

The first amended complaint alleges that Mr. Barker was used by law enforcement as a confidential informant during a controlled drug buy on March 31, 2006.  Mr. Barker told law enforcement that he purchased illegal controlled substances from Mr. Adams, which was untrue.  On April 7, 2006, Mr. Barker again falsely accused Mr. Adams, asserting the latter sold him a quantity of cocaine.  In arresting and charging Mr. Adams, law enforcement relied, in part, upon the false accusations leveled against him by Mr. Barker.

Mr. Barker has never appeared herein.  On June 29, 2011, the Clerk entered default against him.  In the April 15 order, the court granted the defendant officers' motion to dismiss.  <u>Adams</u>, 2011 WL 1464856, *7-*8.  Noting that Mr. Adams' arrest, detention, and prosecution occurred after the issuance of a grand jury indictment, and there being no allegation that the defendant officers misled or unduly pressured the prosecutor or

2

grand jury, the court concluded that "the independent acts of the prosecutor and grand jury were sufficient superceding causes to preclude liability of defendant officers." Id. at *7.

On June 24, 2011, Mr. Adams moved for leave to file a second amended complaint, which motion is addressed in a separate memorandum opinion and order entered today.  On August 16, 2011, Mr. Adams moved for entry of default judgment against Mr. Barker. On August 24, 2012, the court held an evidentiary hearing, during which Mr. Adams presented his evidence of damages against Mr. Barker.

Mr. Adams and his mother Martha were the lone witnesses.  He provided material testimony in support of his damages claim.  He noted that he had been a Logan County resident since 1998 or 1999.  He is the biological, or presumed, father of five children, (1) J. -- seven years old (biological), (2) M. -- four years old, (3) T. -- thirteen years old (biological), (4) N. -- eight years old (presumed -- paternity has not been established), and (5) Ja. -- nine months old (biological).  As of October 1, 2008, he was engaged to Melissa Cline, the mother of J., with whom he had a three-and-one-half year relationship. Rachel Dawn Dingess is the mother of T.  Priscilla Campbell is

the mother of N.  Angel Bryant, with whom Mr. Adams presently resides, is the mother of Ja.  The mother of M. is not apparent from the record.

As of October 1, 2008, Mr. Adams had never been arrested.  On that date, he was attending a birthday party for his mother at her home.  During the event, law enforcement executed a warrant for his arrest.  The party was attended by 40 to 50 people, "[t]he whole entire family and kids," including his children J. and M.  Mr. Adams was arrested in front of the entire assembly and accused of selling drugs.

He was in custody for four to five hours.  As conditions of his pretrial release, he was required to report by phone to the probation officer once a week and to undergo periodic controlled substance testing.  He also had to dispose of his bow and arrows, guns, and knives.  Ultimately, on December 30, 2008, the charges against Mr. Adams were dismissed.

The event was publicized on television and in the print media.  As a result of his arrest, Mr. Adams engagement to Ms. Cline terminated.  His court-ordered visitation rights with J. were suspended for two-and-a-half to three months and remain suspended with T.  These custodial changes stemmed from the

4

respective mothers, Ms. Cline and Ms. Dingess, not wishing their children to be around Mr. Adams following his arrest.  Mr. Adams' visitation rights with N. have not been affected.

As of October 1, 2008, Mr. Adams was working at B&W Contracting.  He had been employed there "[n]ot long," perhaps "30, 60 days, something like that."  He was working 35 to 40 hours a week at a rate of "10 or 12 an hour, might have been 12.50."  He described his work, with one or two co-employees and the owner, as consisting of him as "a cleanup guy doing sheetrock work, putting carpet down, painting[,] . . . all types of residential, commercial carpentry work."  He could not recall for certain who owned the business or whether it is still in operation.  He has had other jobs over the years as well, running equipment and in the mining industry.  He testified to previously keeping a "steady job" but that he now has employers "throw their nose up or . . . just make you feel bad."

He lost his job with B&W Contracting the day following his arrest.  He was unable to find replacement work and was unable to pay his bills.  His water and electric service were both shutoff for three weeks.  His attempts to get public assistance were denied in view of the federal controlled substance charges.

5

When asked how seriously he sought work, however, he stated, "No, not really, not long term, no; just work here, a little bit there, cutting trees here."  Specifically, he stated that he sought work as a truck driver at Logan Concrete but was turned away after a background check when he was told that they did not need him "due to . . . [his] history."  He applied for this job sometime in early to mid-2011.

When asked during the employment process whether he has been convicted of or charged with a crime he responds no.  He is concerned, however, that community "hearsay" about his arrest is resulting in his difficulty finding steady work.  He testified specifically to applying with only one other named employer, Lowe's, who advised him that they were not hiring at the time.

Plaintiff explained the effect his arrest had on his life:

> Just, I mean, tremendous. I mean, just, you know, if you think about it, it could happen to anyone, you know, lose your kids, you know, lose all your reputation, your respect. You know, it's just all gone down the drain.
>
>         . . . .
> Yeah. I mean, it just, you know, your family looks down on you. You know, they just -- they don't look at you like they used to, do you know what I mean, even your friends, you know. Like J[.], my son, said, "My dad got arrested for drugs." You know, I've never done

drugs around my kid or you know what I mean? It just
-- it just really hurts whenever stuff like that
happens to good people.

The first amended complaint alleges that Mr. Barker is
guilty of negligence arising out of the false accusation against
Mr. Adams.  This breach of duty is alleged to have resulted in
"significant damages, including, but not limited to, severe
emotional distress and mental anguish, annoyance and
inconvenience, embarrassment and loss of enjoyment of life."
(First Am. Compl. ¶ 28).  Mr. Adams further alleges a claim
against Mr. Barker for intentional infliction of emotional
distress.

In the damages portion of the complaint, it is stated
as follows:

WHEREFORE, PLAINTIFF demands judgment against
DEFENDANTS, jointly and severally, for damages and
relief as follows:

a. Mental anguish and emotional distress,
past and future;

b. Annoyance and inconvenience, past and
future;

c. Economic loss, past and future;

d. All compensatory damages;

e. Punitive damages;

f. Attorney's fees and costs;

7

g. All statutory relief to which PLAINTIFF
is entitled;

h. All legal relief to which PLAINTIFF is
entitled;

i. All equitable relief to which PLAINTIFF
is entitled;

j. Pre-judgment and post-judgment interest;

and

k. Any and all other relief this Honorable
Court deems appropriate.


II.


A.   Governing Standard


When a party moves for a default judgment, Federal Rule

of Civil Procedure 55(b) authorizes a district court to "conduct

hearings or make referrals" in order to, inter alia, "determine

the amount of damages[,] establish the truth of any allegation by

evidence[,] or investigate any other matter." Fed. R. Civ. P.

55(b)(2)(B)-(D).  It is the case, however, that "unliquidated

damages normally are not awarded without an evidentiary hearing."

James v. Frame, 6 F.3d 307, 310 (5th Cir. 1993).


This is the case inasmuch as a district court should

"not just accept [a plaintiff's] statement of . . . damages" but

8

should instead "ensure that the damages [a]re appropriate."
Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,
Div. of Ace Young Inc., 109 F.3d 105, 111 (2nd Cir. 1997).

Inasmuch as this is a tort action, Mr. Adams is
entitled to prove both general and special damages.  West
Virginia law defines special damages as including "lost wages and
income, medical expenses, damages to tangible personal property
and similar out-of-pocket expenditures . . . ."  W. Va. Code, §
56-6-31.  General damages include "pain and suffering, diminished
ability to engage in normal activities, loss of enjoyment of
life, and mental anguish."  Farmer v. Knight, 207 W. Va. 716,
719, 536 S.E.2d 140, 143 (2000).

A district court may also enter an award of punitive
damages under Rule 55(b).  See Action S.A. v. Marc Rich & Co.,
Inc., 951 F.2d 504 (2nd Cir. 1991); James, 6 F.3d at 310.  The
Supreme Court of Appeals of West Virginia has prescribed that one
is entitled to punitive damages only where it has been shown that
"'gross fraud, malice, oppression, or wanton, willful, or
reckless conduct or criminal indifference to civil obligations
affecting the rights of others appear . . . ."  CSX Transp., Inc.
v. Smith, --- W. Va. ---, ---, 729 S.E.2d 151, 172, (2012)

9

(quoting syl. pt. 4, <u>Mayer v. Frobe</u>, 40 W. Va. 246, 22 S.E. 58 (1895)).

B.    Analysis

        Inasmuch as default has been entered as to liability, Mr. Adams need not prove the elements of his two tort claims against Mr. Barker.  The reckless and false allegations by Mr. Barker led to a host of terrible consequences suffered by Mr. Adams.  His unblemished record ended on October 1, 2008, when arrested while 40 to 50 family and friends, including some of Mr. Adams' children, watched.  The entire assembly learned that he had been accused of felony controlled substance violations.  He then spent four to five hours under arrest and was forced to comply with pretrial release conditions while the cloud of suspicion hung over him.

        Mr. Adams eventually secured his formal exoneration three months later, but the damage to his reputation continued based upon media coverage and the community grapevine.  His engagement terminated.  His custody rights with some of his children were interrupted.  He lost his job.  He hesitated to be seen in public.

As compensation for the pain and suffering, mental anguish, and similar items of general damage, the court finds that Mr. Barker is answerable in damages for the sum of $50,000. The entitlement to, and calculation of, special damages is more difficult.  While there appears to be a clear causal link between Mr. Adams' arrest and his termination from B&W Contracting based upon the time line, it is uncertain how long he might have reasonably expected to remain employed there.  The court is unable to forecast more than a conservative time period of 24 weeks.  Assuming a 35-hour workweek at the rate of $10 an hour, the amount of lost wages recoverable is $8,400.

As a general matter, Mr. Adams has not proven that his arrest and prosecution proximately caused his inability to obtain substitute employment.  In the isolated instances where doubt arises, such as the sought-after position with Logan Concrete, he has proven neither the time period that he might have expected to hold the replacement job nor the applicable hourly rate.  He likewise has not shown to a reasonable certainty any future damages that might properly be included in any special damage award.

The matter of punitive damages is also a difficult one. One knows little about Mr. Barker's state of mind.  For example,

11

one must speculate whether he purposed to do harm to Mr. Adams.
At the same time, one can properly infer that Mr. Barker, at a
minimum, accused Mr. Adams recklessly and with criminal
indifference to the civil obligations he owed to the criminal
justice system and Mr. Adams.  The court, accordingly, finds that
Mr. Adams has demonstrated an entitlement to punitive damages
and, having considered the applicable factors found in Garnes v.
Fleming Landfill, Inc., 186 W. Va. 656, 413 S.E.2d 897 (1991),
the court additionally finds that punitive damages in the amount
of $50,000 is appropriate.[1]

_____

[1] The court considers aggravating evidence including (1) the
reprehensibility of the defendant's conduct; (2) whether the
defendant profited from the wrongful conduct; (3) the
financial position of the defendant; (4) the appropriateness
of punitive damages to encourage fair and reasonable
settlements when a clear wrong has been committed; and (5)
the cost of litigation to the plaintiff. Factors in
mitigation include: (1) whether the punitive damages bear a
reasonable relationship to the harm that is likely to occur
and/or has occurred as a result of the defendant's conduct;
(2) whether punitive damages bear a reasonable relationship
to compensatory damages; (3) the cost of litigation to the
defendant; (4) any criminal sanctions imposed on the
defendant for his conduct; (5) any other civil actions
against the same defendant based upon the same conduct; and
(6) additional relevant evidence.  See also Smith, 229 W.
Va. 316, 729 S.E.2d 151

12

Based upon the foregoing analysis, it is ORDERED as follows:

1.  That Mr. Adams' motion for default judgment be, and it hereby is, granted;

2.  That Mr. Adams be, and he hereby is, awarded against Mr. Barker the sum $58,400 in compensatory damages and $50,000 in punitive damages; and

3.  That this action be, and it hereby is, dismissed and stricken from the docket.

The Clerk is directed to forward a copy of this written opinion and order to counsel of record and any unrepresented parties.

DATED:  January 25, 2013

John T. Copenhaver, Jr.
United States District Judge

13